OF

## THE STATE OF NEW JERSEY.

FEBRUARY TERM, 1891.

ALEXANDER T. McGILL, ORDINARY.

ABRAHAM V. VAN FLEET, VICE-ORDINARY.

BARCLAY LIPPINCOTT

*v.*

WILLIAM H. SNOWDEN.

1. Under the supplement to the act which regulates assignments for the benefit of creditors, approved April 12th, 1888 (*P. L. of 1888 p. 422*), the fraud or irregularity necessary to authorize the orphans court to direct the giving of notice may be shown *ex parte* by affidavit.

2. When the claim of a creditor is excepted to, such creditor cannot object that the exceptant has no right to prosecute the suit, because, in consideration of a dividend advanced to him, by the assignee, he agreed with the assignee

17 [257]

to waive his right to except to the claims of other creditors. Such waiver was solely for the protection of the assignee.

3. Where a creditor, having a claim for usurious interest, deliberately falsifies the statement of it, so that it appears to be lawful, and thus presents it to the assignee, he perpetrates a fraud even though the claim presented be not in excess of the usurious claim.

4. The mere fabrication of written evidence to support a just and lawful claim, does not destroy the validity of the claim.

On appeal from a decree of the orphans court of Atlantic county.

*Mr. Samuel H. Grey,* for the appellant.

*Mr. David J. Pancoast,* for the respondent.

THE ORDINARY.

The decree appealed from determines exceptions which were filed, by William H. Snowden, to the account of George T. Lippincott, assignee for the benefit of the creditors of Oscar Peuckert, and, as well, exceptions, by the same person, to creditors' claims, by Lippincott Sons & Co., and the appellant, Barclay Lippincott, which had been presented to the assignee. The decree allows the claim of Lippincott Sons & Co., but, for several reasons, reduces the amount of the appellant's claim. It deducts from it a large sum; because the transaction, out of which the greater portion of it grew, was deemed to be usurious, and also allows a set-off, amounting to $373.62, against it. Besides, the decree charges the assignee with the costs of the litigation, including a counsel fee of $300 to the proctors of the exceptant, and directs that the amount of those costs shall be deducted from the dividend which will be payable by the assignee to the appellant.

Barclay Lippincott alone appeals from the decree. The assignee has not appealed.

To properly understand the questions in controversy, it is necessary to shortly state the pertinent facts established by the proofs.

The assignor, Oscar Peuckert, is a German, who, for several years, served as a soldier in the German army. He came to the United States in 1879, and first found employment as a gardener. After some years he met Barclay Lippincott, the appellant, who was at the head of a Philadelphia auction house, called Lippincott Sons & Co., who employed him to care for a sail boat. After a time Lippincott made him a salesman in a general merchandise store, named "The Grand Depot," which Lippincott then conducted at Atlantic City.

In October, 1883, Peuckert concluded, or was induced, to buy "The Grand Depot," and consequently bargained with Lippincott for it, with the result that the stock in the store was sold to him for $4,208.97, its cost price, and a portion of the store building was leased to him for $500 a year.

As Peuckert had no money, the sale of merchandise was entirely upon credit. In determining the terms of the credit, it was agreed in writing that the principal should be paid in three years, and that, in the meantime, Peuckert should pay ten per cent. a year upon the $4,208.97.

It plainly appears that after Peuckert had made his purchase and entered into business for himself, Lippincott exercised a dominant influence over him. His ascendency was undoubtedly due to his superior education, business experience and strength of will, his past relationship to Peuckert and his position as a large creditor.

Peuckert's acts of obedience confirm me in the belief that in all important business matters he was subservient to Lippincott's will.

In 1885 he enlarged his store, taking additional room in Lippincott's building. It is questionable whether there was a distinct agreement for the payment of increased rent, but as the additional room obtained, was valuable, and in no sense a gift, Peuckert was at least bound to pay its fair rental value.

Just at this time, and before the enlargement of the store was completed, Peuckert became involved in some unexplained difficulty with a woman, and to escape her, at the appellant's instance, in December, 1885, went to Florida, to a plantation there,

belonging to Lippincott, leaving his business in charge of his sister, whom Lippincott advised. It was upon this occasion that Lippincott devised the first deceit appearing in the proofs, and gave it out, that Peuckert had gone to the " old country," reconciling the falsehood with his conscience by the assumption that Florida was entitled to that distinction because it contained one of the oldest settlements in the United States.

During this absence Peuckert's sister, under Lippincott's advice, continued the improvement and enlargement of the store.

In May, 1886, Peuckert returned to Atlantic City and, without dissent or objection to the improvements, took possession of the store and continued the business as he then found it.

Three months later he discovered that he was so hopelessly insolvent that he could not continue his business, and hence, on the 9th of August, he assigned all his property, for the benefit of his creditors, to George T. Lippincott, the appellant's son. Before executing the assignment, he had offered to make the appellant his assignee, but the appellant urged the selection of his son in his stead, promising to become the son's bondsman. The proceedings necessary in the assignment were conducted by the appellant's lawyers, and, upon the very day upon which the assignment was made, with the approval and assistance of the appellant and the assignee, Peuckert secretly started again for Florida. By the appellant's advice, in order to mislead his creditors as to his whereabouts, as he passed through Baltimore he posted a previously-prepared message to the appellant, to the effect that he had found employment in Baltimore, which message-the appellant afterwards made use of for the purpose for which it was designed. Further, to prevent his whereabouts from being discovered, he thereafter corresponded with the appellant, by using envelopes which the appellant had addressed to himself so that Peuckert's handwriting upon them might not betray him.

In making claim to the assignee against Peuckert's estate, Lippincott's first demand was for $1,300 for one year's rent. If he and Peuckert had an express agreement relative to an increase of the rent beyond the $500 previously agreed upon,

which is doubtful, it was at best merely a verbal one.   In order to fabricate written evidence of this part of his claim, in September, 1886, the appellant sent a letter to Peuckert and requested him to copy it and return the copy, in his own handwriting, that it might be used in support of the rent claim.   The letter, though actually copied by Peuckert in September, 1886, purported to have been written on the 20th of September, 1885, and by its terms made Peuckert promise and agree to pay $1,300 rent for the year commencing October 1st, 1885, and ending on September 30th, 1886.

In the next place, the appellant demanded the price of the merchandise that he had sold to Peuckert, and, fearful that if he should demand the ten per cent. which Peuckert had agreed to pay him, the claim would appear and be held to be usurious, he made the claim out in this manner :

| | | |
|---|---:|---:|
| " Stock for merchandise, as per inventory.................................. | $4,208 | 97 |
| " Six per cent. interest as agreed from October 1st, 1883, to August 9th, 1886............................................................ | 721 | 82 |
| " Good will.............................................................. | 500 | 00 |
| | $5,430 | 79 |
| " Less bill of merchandise................................................ | 192 | 57 |
| | $5,238 | 22 " |

To create evidence to support the claim thus made out, on the 4th of October, 1886, he wrote to Peuckert that he had been advised by his lawyers that the original written agreement of sale, though good enough between him and Peuckert, was not good in law under an assignment, and that therefore it should not be produced, but that another one should be prepared and substituted for it.   As to the advice of one of his lawyers (not connected with the gentleman who represents the appellant on this appeal), he wrote in the following language :

" He says the main thing is the ten per cent. interest, which, as interest, is not lawful, and it should be made to express six per cent. interest, and what would be equal to four per cent. must be put in as bonus for the good will and transfer of the business to you; and if we say five hundred dollars bonus, it makes it within a few dollars of what you and George figured on as the

Lippincott *v.* Snowden.

amount due me according to your offer of ten per cent. He says that the agreement is uselessly long, and Mr. ———— says the enclosed is what we really meant and want, and is sufficient to guide the auditor, which is the main thing, for, of course, when we made it we intended to make it good in law as well as good between ourselves."

He then requested Peuckert to sign the newly-fabricated agreement and return it, and added that he could have it witnessed at Atlantic City by some one who was acquainted with his and Peuckert's signatures; that that agreement must be exhibited, but that the auditor would not be hard to satisfy and the court would confirm the auditor's report without examining the exhibits.

Together with this letter, the appellant sent the new agreement to which he referred, which Peuckert obediently signed and returned to him. That agreement is in evidence. It bears date on the 1st of October, 1883, and, among other things, provides that Peuckert shall pay $500 a year rent, $500 for the good will of the business and $4,208.97, with interest, for the merchandise purchased. In other words, it, in terms, completely supports the claim presented.

The original agreement has not been produced. The appellant professes to have lost his copy of it, and Peuckert swears that his copy was in his safe with his other papers and went to the appellant's son, his assignee. It may be here said of the assignee, not only that he was the appellant's son, but that he was in some way interested in the firm of Lippincott Sons & Co., who exhibited and were allowed a claim of $6,037.32 against Peuckert, and also was advised and guided by his father's lawyers, who were referred to in the letter to Peuckert, from which quotation has just been made.

On the 19th of May, 1887, the assignee offered, by circular letter, prepared by his lawyers, to pay each of the creditors fifty per cent. of his or her claim if he or she would, in writing, agree to waive all exceptions he or she had, or could have, to the claims of other creditors as presented, stating that if such waiver were not given no payment would be made until after the following September term of the Atlantic county courts. With the

letter he enclosed a blank form of waiver to be signed. It does not appear how many creditors accepted this offer, but it is shown that Snowden, the appellee, who claimed $2,165.38 as a creditor, executed a waiver under the date May 21st, 1887, and afterwards was paid fifty per cent. of his claim.

On May 27th, 1887, Barclay Lippincott wrote to Peuckert and dismissed him, without money, from his plantation. In the November following the assignee finally accounted.

After the expiration of the time within which, by law, exceptions might have been filed to the account of the assignee and to claims of creditors, the appellee applied to the orphans court of Atlantic county for permission to attack the claims of the appellant and Lippincott Sons & Co. as fraudulent, but, because the statutory limit for filing exceptions had expired, his application was denied. Afterwards, by a supplement to the Assignment act, approved April 12th, 1888 (*P. L. of 1888 p. 422*), it was provided, that at any time within two years from the making of any assignment, which had theretofore been made, the assignee, or any creditor or person interested, might file exceptions to the claim or demand of a creditor or to the final account of the assignee, and where fraud or irregularity should be shown the orphans court should order notice to be given to those concerned, and thereupon it should be vested with full and complete jurisdiction to determine the fraud and irregularity. Under this act, on June 1st, 1888, Snowden filed exceptions to the account of the assignee and the claims of the appellant and Lippincott Sons & Co., and, upon an affidavit made by Peuckert, applied to the orphans court to direct notice to the assignee, the appellant and Lippincott Sons & Co., and the court, after adjudging that due proof of fraud and irregularity had been made, ordered that the assignee and the designated claimants should show cause before it, on the second Tuesday of September then next, why the account should not be corrected and the indicated claims disallowed, and directed that the exceptions should be served and that testimony might be taken by the parties. In pursuance of this order the exceptions were served and the parties commenced to take testimony in July, 1888, and continued taking it, from time

Lippincott *v.* Snowden.

to time, for several months.    Upon the argument of the exceptions and the order to show cause, it was objected that the requirements of the act of 1888 had not been complied with, in that fraud or irregularity had not been shown by proof before the order to show cause was made, and now it is insisted, in the first place, that the orphans court was without jurisdiction, in that the act of 1888 contemplated not only that fraud or irregularity should be shown by proof, but also that it should be shown upon an application, of which notice should be given.

It is noticed that the statute of 1888 first permits the filing of exceptions, and then provides that when fraud or irregularity is shown, notice shall be given.    By necessary implication from the terms of the act there must be an *ex parte* preliminary showing to induce the court to notify and hear the parties complained of.    The statute is silent as to the manner in which fraud and irregularity is to be thus primarily shown, but, following the usual and approved practice in courts of justice, it must be by a statement of facts under oath.    Either the exceptions should set out such facts and duly verify them by oath, or there should be independent proof of them.    The latter method was pursued in this case.    By the affidavit of Oscar Peuckert it was made to appear, among other things, that while the affiant was in Florida the appellant claimed $1,300 for rent, when in fact he was entitled to only $500, and that to make such claim appear true and right, he procured the affiant to sign a false agreement; also, that the assignee had failed to demand and have a just set-off to the appellant's claim.    This showing of fraud and irregularity is not co-extensive with that which the orphans court found upon the proofs taken under the order to show cause, but I fail to perceive why it was not sufficient to give the court jurisdiction to examine the claims and the account objected to, at least as far as the exceptions demanded.    The statute is intended as a means of relief against fraud, and must be liberally construed to effectuate its purpose.    I have no hesitation in holding that the orphans court had jurisdiction.    The appellant's objection to the form of procedure is purely technical.    He nowhere asserts, nor

does it appear, that he did not have notice of all the allegations against him and ample opportunity to be heard upon them.

It is next insisted that the appellee Snowden cannot prosecute this suit, because he agreed with the receiver to waive his right to except to the claims of other creditors. It may be that the waiver, if not vitiated by fraud, is a bar to Snowden's reaping benefit from his exceptions at the expense of the assignee, but it cannot be relied upon by a fraudulent claimant as a defence to attack upon his fraud. He has no right to seek refuge behind the waiver to which he was not a party, for which he gave no consideration and by which he was not prejudiced.

Proceeding, then, to the merits of the questions raised by the exceptions which are involved in this appeal, it is observed that the most important inquiry is, whether the appellant's claim, so far as concerns the sale of the merchandise, is tainted with usury, which was fraudulently concealed. Peuckert testifies that upon the purchase price of the goods bought by him he was to pay ten per cent. interest for three years. The appellant substantially admits that such was the bargain, but pretends that he understood that only six per cent. was really interest, the remaining four per cent. being payment for good will. Whatever contradiction exists between Peuckert and the appellant could be set at rest by inspection of the written agreement, which was executed by them in 1883, but the appellant claims that he has lost his part of that agreement, and Peuckert states that his part of it went to the appellant's son, his assignee. In this situation I turn to the appellant's letter of October 4th, 1886, and find that he there avows a purpose to withhold the agreement of 1883, and to substitute for it the fabricated document, made in 1886, which he procured Peuckert to sign, and, at the same time, that he declares that the latter document is to be resorted to to conceal the declaration of the true agreement that ten per cent. interest is reserved. In view of these declarations I am constrained to believe that the agreement of 1883 is not lost, but is, even now, deliberately and designedly withheld. Under such a condition it appears to be fit that the familiar rule, *omnia præsumuntur contra spoliatorem*, should be applied, and I should

assume the real agreement to be plainly usurious. The many disingenuous devices of the appellant, which are exhibited in the proofs throughout the case, and his evident evasion and lack of manly frankness in parts of his testimony, forbid reliance upon his oath to the contrary.

Now, to conceal that unlawful agreement and then present a claim which receives its life from it, in lawful, yet false form, is a fraud. And when that fraud is viewed in the light of the admission in the letter to Peuckert, that the unlawful claim was to be supported by fabricated evidence which is deliberately contrived for imposition upon the court and its auditing officer, it becomes most plainly apparent that the whole scheme was replete with moral turpitude, which calls for vigorous denunciation in unmistakeably clear language.

I agree with the orphans court that the appellant's claim for $1,300 rent should be allowed. It is not necessary to determine the truth of the appellant's insistment that Peuckert agreed to pay that amount, for he unquestionably accepted additional accommodations for which he was bound to pay, and the evidence abundantly satisfied me that $1,300 was not in excess of the fair rental value of the premises occupied. The appellant's fabricated letter to sustain this claim, antedated to suit his purpose, does not destroy its validity. Throwing out the letter with its intended deception, enough remains in the case to fairly substantiate the claim.

The proofs make it clear that the offset of $373.62 was properly allowed.

I have been impressed that the assignee in this matter has been the mere instrument of the appellant; all the proofs indicate this so strongly that the justice and propriety of charging the appellant with the costs of the proceedings reviewed is beyond question.

After a careful review of this case, I am satisfied that, at least as far as the appellant is concerned, the decree of the orphans court is right and must be affirmed, with costs.